**ORIGINAL**

**FILED**

**NOV 1 5 2016**

**U.S. COURT OF
FEDERAL CLAIMS**

# In the United States Court of Federal Claims

No. 16-360
Filed: November 15, 2016

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **JACOB J. ZHUCKKAHOSEE,** *Plaintiff, pro se,* v. **THE UNITED STATES,** *Defendant.* | 28 U.S.C. § 1491 (Tucker Act Jurisdiction); 28 U.S.C. § 1495 (Damages for Unjust Conviction); 28 U.S.C. § 2513 (Claims Against the United States for Unjust Conviction); 28 U.S.C. § 1631 (Transfer to Cure Want of Jurisdiction); Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) (Subject Matter Jurisdiction); RCFC 15(a)(2) (Second Amended Pleading). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Jacob J. Zhuckkahosee**, *pro se*, Plaintiff.

**Albert Salvatore Iarossi**, United States Department of Justice, Acting Assistant Attorney General, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN**, *Judge*.

## I. RELEVANT FACTUAL BACKGROUND.[1]

Jacob Zhuckkahosee is a member of the Menominee Indian Tribe. On January 10, 2012, the Menominee Tribal Court convicted Mr. Zhuckkahosee of one count of First Degree Sexual Assault Of A Child and one count of Battery. Pl. Ex. B. That same day, Mr. Zhuckkahosee was sentenced to: (1) twelve months of Tribal Jail with six months stayed; (2) payment of a $150 fine; and (3) eighteen months of probation. Pl. Ex. A. Pursuant to the Menominee Sex Offender Registration and Notification Ordinance, Mr. Zhuckkahosee was required to register and remain

---

[1] The relevant facts discussed herein were derived from the June 22, 2016 Amended Complaint ("Am. Compl. 1–3"), and the attached exhibits ("Pl. Ex. A–D"). The court has labeled the January 31, 2012 Menominee Tribal Court Sentencing Order as Exhibit A; the September 16, 2013 Ami R. Nacotee Criminal Complaint as Exhibit B; and the July 19, 2013 Statement of Gerald Thorpe, Sex Offender Registry Coordinator, as Exhibit C.

registered for the duration of his life, as a sex offender with the Tribal Sex Offender Registry. Pl. Ex. B.

On May 30, 2012, the Menominee Sex Offender Registry Coordinator and the Wisconsin Sex Offender Registry Specialist visited Mr. Zhuckkahosee at the Menominee Tribal Jail. Pl. Ex. C. Mr. Zhuckkahosee was informed of his obligations as a registered sex offender and provided with acknowledgment forms. Pl. Ex. C. Mr. Zhuckkahosee signed the forms and subsequently was released from the Menominee Tribal Jail. Pl. Ex. C.

On July 12, 2012, Mr. Zhuckkahosee reported to the Menominee Tribal Sex Offender Registry Office that he lived at N276 Max Martin Road, Keshena, Wisconsin. Pl. Ex. C. On April 13, 2013 and June 3, 2013, the Registry Coordinator mailed a letter to N276 Max Martin Road in order to verify that Mr. Zhuckkahosee lived at that address. Pl. Ex. C.

On July 16, 2013, the police responded to a fire at N276 Max Martin Road. Pl. Ex. C. At the scene, officers questioned a resident of N276 Max Martin Road who informed them that Mr. Zhuckkahosee did not live there. Pl. Ex. C.

On July 17, 2013, the police received a report that Mr. Zhuckkahosee inappropriately touched a four-year old girl. Pl. Ex. C. In response, the police visited Mr. Zhuckkahosee's listed residence to conduct a Sex Offender Registry Residential Verification. Pl. Ex. C. Upon arrival, they discovered that Mr. Zhuckkahosee had not lived at N276 Max Martin Road since July 4, 2013. Pl. Ex. C.

On July 18, 2013, the police determined that Mr. Zhuckkahosee was living in the woods off of Kittecon Road on the Menominee Reservation. Pl. Ex. C. Later that day, Mr. Zhuckkahosee was located and arrested. Pl. Ex. C.

On September 16, 2013, the Menominee Tribal Prosecutor filed a Criminal Complaint in Tribal Court alleging that Mr. Zhuckkahosee violated the Menominee Sex Offender Registration and Notification Ordinance. Pl. Ex. B.

Some time later, the United States indicted Mr. Zhuckkahosee for Sexual Abuse Of A Person Under The Age Of Sixteen. Am. Compl. at 1. Mr. Zhuckkahosee pled guilty before the United States District Court for the Eastern District of Wisconsin and was sentenced to 135 months of imprisonment. Am. Compl. at 1. The Menominee Tribe subsequently transferred Mr. Zhuckkahosee to the Federal Correctional Institute in Mariana, Florida, where he is currently serving his prison term.

## II.    PROCEDURAL HISTORY.

On March 18, 2016, Mr. Jacob Zhuckkahosee ("Plaintiff") filed a Complaint ("Compl.") in the United States Court of Federal Claims alleging that Wisconsin, Menominee Tribe and federal officials violated his statutory and constitutional rights. Plaintiff also filed a Motion For Leave To Proceed *In Forma Pauperis.* On April 8, 2016, the court granted the March 18, 2016 Motion.

On May 19, 2016, the Government filed a Motion to Dismiss, pursuant to Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC"), arguing that the court did not have jurisdiction to adjudicate the claims alleged in the March 18, 2016 Complaint, because Plaintiff did not name the United States as a defendant.

On June 22, 2016, Plaintiff filed a Motion To Amend and an Amended Complaint. The June 22, 2016 Amended Complaint named the United States as the defendant and set forth two claims. The first claim alleged that the Menominee Indian Tribe improperly transferred Plaintiff into federal custody and that the United States wrongfully imprisoned Plaintiff in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, as well as the Wolf River Treaty of 1854.[2] The second claim alleged that the United States improperly certified Plaintiff for civil commitment as a sexually dangerous person under the Adam Walsh Child Protection And Safety Act Of 2006, 42 U.S.C. §§ 16901–16962 ("Adam Walsh Act"). On June 23, 2016, the court granted Plaintiff's June 22, 2016 Motion To Amend.

On July 7, 2016, the Government filed a Motion To Dismiss Plaintiff's Amended Complaint ("Gov. Mot."), pursuant to RCFC 12(b)(1), arguing that the court did not have jurisdiction over either claim alleged in the June 22, 2016 Amended Complaint.

On July 25, 2016, Plaintiff filed a Response to the July 7, 2016 Motion. On August 4, 2016, the Government filed a Reply.

On September 20, 2016, Plaintiff filed a Motion For Extension Of Time To File [Sur] Reply to the Government's August 4, 2016 Reply and a Motion For Leave To File A Second Amended Complaint.

On September 26, 2016, the Government filed a Response to the September 20, 2016 Motion For Leave To File A Second Amended Complaint, arguing that the court should deny the motion, because amendment would be futile.

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute and/or executive

---

[2] The full text of the Wolf River Treaty of 1854 is available at: http://digital.library.okstate.edu/kappler/vol2/treaties/men0626.htm.

agency regulation that provides a substantive right to money damages. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan,* 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### B.      Standard For Motion To Dismiss Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading. . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States,* 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### C.      Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States,* 60 F.3d 795, 799 (Fed. Cir. 1995).

### D.      The Government's July 7, 2016 Motion To Dismiss The June 22, 2016 Amended Complaint, Pursuant To RCFC 12(b)(1).

#### 1.      The Government's Argument.

The Government argues that the United States Court of Federal Claims does not have jurisdiction to adjudicate any of the claims alleged in the June 22, 2016 Amended Complaint. Gov. Mot. at 4. The Government reads the June 22, 2016 Amended Complaint to identify six possible claims: (1) wrongful conviction; (2) unjust imprisonment; (3) violation of due process rights under the Fifth and Fourteenth Amendments; (4) violation of the Sixth and Eighth Amendments;

(5) improper custody of a member of the Menominee Indian Tribe in violation of the Fifth Amendment's Takings Clause; and (6) improper application of the "contract provisions" of the Adam Walsh Act.

First, the Due Process Clause of the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act. Gov. Mot. at 6. Similarly, the Sixth and Eighth Amendments do not mandate money damages. Gov. Mot. at 6.

Although the court has jurisdiction to adjudicate claims alleging a violation of the Fifth Amendment's Takings Clause, a valid takings claim must allege that the Government lawfully seized private property for public use, without just compensation. Gov. Mot. at 6 (citing *Ruth Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001)). Because the June 22, 2016 Amended Complaint alleged that the Government's actions were wrongful and illegal, the takings claim does not satisfy the pleading requirements to establish jurisdiction under the Takings Clause. Gov. Mot. at 6.

To the extent that the June 22, 2016 Amended Complaint alleges that the United States District Court for the Eastern District of Wisconsin wrongfully convicted Plaintiff, that claim would require the court to review the merits of a federal district court decision. Gov. Mot. at 5. But, the United States Court of Federal Claims "does not have jurisdiction to review the merits of a decision rendered by a federal district court." Gov. Mot. at 5 (quoting *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015)).

Moreover, the court does not have jurisdiction to adjudicate claims for compensation due to unjust imprisonment, unless a plaintiff's "conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or . . . he has been pardoned upon the stated ground of innocence and unjust conviction." Gov. Mot. at 7; *see also* 28 U.S.C. § 2513(a). Plaintiff's conviction, however, has not been reversed or pardoned. Gov. Mot. at 7.

Finally, although the court has jurisdiction to adjudicate breach of contract claims against the United States, the June 22, 2016 Amended Complaint does not allege a contractual relationship between Plaintiff and the United States, instead the "contract provisions" of the Adam Walsh Act is cited. Gov. Mot. at 7.

### 2.    Plaintiff's Response.

Plaintiff responds that, under *Moden v. United States*, 404 F.3d 1335 (Fed. Cir. 2005), the court has jurisdiction to adjudicate a plaintiff's claim alleging a violation of a money-mandating constitutional provision, statute, or regulation unless the claim is "so insubstantial, implausible, foreclosed by prior [case law], or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 1341. The June 22, 2016 Amended Complaint's Fifth Amendment takings claim alleges a violation of a money-mandating constitutional provision and is not completely devoid of merit. Therefore, the court at least has jurisdiction to adjudicate that claim.

E.     **The Court's Resolution.**

1.     **The Court Does Not Have Jurisdiction Over Any Claims Alleged In The June 22, 2016 Amended Complaint.**

The June 22, 2016 Amended Complaint alleges that the Government violated Plaintiff's Fifth, Sixth, Eighth and Fourteenth Amendment rights, as well as the Wolf River Treaty of 1854. Am. Compl. at 1–2. Plaintiff does not specify how the Government violated the enumerated constitutional provisions, except by alleging that the Menominee Tribal Court wrongfully transferred Plaintiff into the Government's custody and that the United States District Court for the Eastern District of Wisconsin wrongfully convicted and imprisoned him. Am. Compl. at 1–2. The June 22, 2016 Amended Complaint also alleges that the United States District Court for the Eastern District of Wisconsin wrongfully applied the Adam Walsh Act. Am. Compl. at 2.

As the Government argued, the court does not have jurisdiction to adjudicate any of the constitutional claims alleged in the June 22, 2016 Amended Complaint. "The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013). Likewise, the court does not have jurisdiction to adjudicate claims based on the Sixth and Eighth Amendments, because neither is money-mandating. *See Milas v. United States*, 42 Fed. Cl. 704, 710 (1999) ("[T]he . . . Sixth Amendment[] [is] not money mandating and, consequently, cannot combine with the Tucker Act to provide the court jurisdiction."), *aff'd per curiam*, 217 F.3d 854 (Fed. Cir. 1999); *see also Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (quoting *Edelmann v. United States*, 76 Fed. Cl. 376, 383 (2007)) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as [it] 'is not a money-mandating provision.'").

To the extent that the June 22, 2016 Amended Complaint alleges a violation of the Takings Clause, the court does not have jurisdiction to adjudicate that claim. "In determining whether the [court] has jurisdiction, [the court must determine] that the [relevant] claim is founded upon a money-mandating source *and* [that] the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (emphasis added). Although the Takings Clause is money-mandating, "[a] claimant under the Takings Clause must show that the government, by some specific action, took a private property interest for a public use without just compensation." *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). The June 22, 2016 Amended Complaint does not allege that the Government interfered with Plaintiff's private property interests. Instead, it claims that the Government violated the Fifth Amendment by wrongfully convicting and imprisoning Plaintiff. Therefore, the June 22, 2016 Amended Complaint fails to make a nonfrivolous allegation that Plaintiff is within the class of claimants entitled to recover under the Takings Clause. As such, the court does not have jurisdiction to adjudicate this claim.

The court has jurisdiction to "render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. But, for the court to adjudicate such a claim, the plaintiff must satisfy the requirements of 28 U.S.C. § 2513. *See Grayson v. United States*, 141 Ct. Cl. 866 (1958) (explaining that 28 U.S.C §§ 1495

and 2513 must be read together); *see also See Chevalier v. United States*, 329 F. App'x 924, 926 (Fed. Cir. 2009). Section 2513, provides that any person suing the Government under section 1495 must allege:

> [that] [h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction[.]

28 U.S.C. 2513(a)(1). The June 22, 2016 Amended Complaint, however, does not allege that Plaintiff's conviction was reversed or set aside or that Plaintiff subsequently was found not guilty or pardoned of the relevant offenses. Therefore, the court does not have jurisdiction to adjudicate Plaintiff's unjust conviction and imprisonment claims.

Finally, the court does not have jurisdiction to adjudicate claims based on either the Adam Walsh Act or the Wolf River Treaty of 1854, because neither "can fairly be interpreted as mandating compensation by the Federal Government," *Testan*, 424 U.S. at 400. The Adam Walsh Act establishes a comprehensive national system for the registration of sex offenders. *See* 42 U.S.C. § 16901. But, none of its provisions mandate the payment of money to registered sex offenders. The Wolf River Treaty of 1854 provides that the Menominee Tribe will cede tribal lands to the Government in exchange for a temporary settlement on the Wolf River, sponsorship of various public welfare programs and payment of $242,686. The Treaty does not contain any language that can fairly be interpreted as mandating compensation by the Government to individual members of the Menominee Tribe. Moreover, the court does not have jurisdiction to adjudicate the Wolf River Treaty claim under 28 U.S.C. § 1505—providing that "[t]he United States Court of Federal Claims [has] jurisdiction of any claim against the United States accruing . . . in favor of any tribe, band, or other identifiable group of American Indians"—because that provision does not apply to actions brought by individual members of Indian Tribes and the June 22, 2016 Amended Complaint only alleges injuries to Plaintiff as an individual. *See Fields v. United States*, 423 F.2d 380, 383 (Ct. Cl. 1970) ("[S]ince the instant case is one brought by individual Indians and not a tribe, band, or identifiable group of Indians . . . defendant is correct in asserting that section 1505 does not apply to the present case.").

### 2. The June 22, 2016 Amended Complaint Should Not be Transferred To A United States District Court, Pursuant To 28 U.S.C. § 1631.

Title 28 U.S.C. § 1631 provides:

> [w]henever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed

in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

The United States Court of Federal Claims is authorized to transfer the June 22, 2016 Amended Complaint, but only when the conditions of section 1631 are met. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1375 (Fed. Cir. 2005) ("[T]he trial court could have ordered transfer without being asked to do so by either party[.]"). The decision to transfer rests within the discretion of the transferor court. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (recognizing that "[the] trial court has broad discretion in transfer decisions"); *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816–17 (1988) (holding that a transfer order should be affirmed unless "clearly erroneous"). In order for a case to be transferred under section 1631, the court must determine that: (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been brought in the transferee court at the time the case was filed; and (3) transfer is in the interest of justice. *See Tex. Peanut Farmers*, 409 F.3d at 1374 (holding that transfer is appropriate under section 1631 when the court finds that there is a want of jurisdiction, the action could have timely been brought in another court, and transfer is in the interest of justice).

In this case, the first requirement of section 1631 is satisfied, because the court does not have subject matter jurisdiction over the claims alleged in the June 22, 2016 Amended Complaint. But, transfer would not be in the interest of justice, because the June 22, 2016 Amended Complaint also fails to state a claim upon which relief can be granted. *See Faulkner v. United States*, 43 Fed. Cl. 54, 56 (1999) ("If . . . transfer would . . . be futile . . . the deciding court may decline to transfer the case and dismiss it."); *see also Bunch v. United States*, 78 F.3d 605 (Fed. Cir. 1996) ("[T]ransfer is likely to be futile, and thus not 'in the interest of justice' as [section] 1631 requires.") (unpublished). The June 22, 2016 Amended Complaint alleges no facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It contains only "the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678. Therefore, the court has determined that the June 22, 2016 Amended Complaint would not survive a motion to dismiss for failure to state a claim so that transfer, under section 1631, would not be in the interest of justice.

### 3.   Plaintiff's September 20, 2016 Motion For Leave To File A Second Amended Complaint Is Denied.

Under RCFC 15(a), a party may amend its pleadings once as a matter of course. "In all other cases [however] a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave [to amend] when justice so requires." RCFC 15(a)(2). But, the court may exercise its discretion to deny leave if it finds evidence of " undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Futility of the proposed amendment is an adequate reason to deny leave to amend." *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000). "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must . . . proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006). Plaintiff filed a Second Amended Complaint on September 20, 2016, but it does not allege any new claims; instead it simply reiterates allegations raised in the June 22, 2016 Amended Complaint and lists a number of federal statutes, without any explanation of how they apply to this case.

For the reasons discussed herein, the claims alleged in the September 20, 2016 Second Amended Complaint would not survive a motion to dismiss, pursuant to RCFC 12(b)(1). Therefore, the court has determined that amendment would be futile and denies the Plaintiff's September 20, 2016 Motion.

## IV.    CONCLUSION.

For the reasons discussed herein, the Government's July 7, 2016 Motion to Dismiss is granted. *See* RCFC 12(b)(1). The Clerk is directed to dismiss the March 18, 2016 Complaint.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN,**
*Judge*